# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **MARY HARRIS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 19-00265-CG-N** |
| | ) | |
| **MONROE COUNTY PUBLIC** | ) | |
| **LIBRARY BOARD OF TRUSTEES;** | ) | |
| **MONROE COUNTY COMMISSION** | ) | |
| **et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## REPORT AND RECOMMENDATION

This matter is before the Court on the Motion to Dismiss (Doc. 15) filed by Defendant Monroe County Commission ("MCC"), the Motion to Dismiss as to Counts I, II and IV (Doc. 33) filed by Defendant Steve Stacey ("Stacey"), and the Motion to Dismiss as to Counts I and II (Doc. 35) filed by Defendants Monroe County Public Library Board of Trustees ("the Board"), Shannon Powell ("Powell"), Ann Pridgen ("Pridgen"), and Jerome Sanders ("Sanders"). The assigned District Judge has referred said motions to the undersigned Magistrate Judge for appropriate action under 28 U.S.C. § 636(a)-(b), Federal Rule of Civil Procedure 72, and S.D. Ala. GenLR 72(a). *See* S.D. Ala. GenLR 72(b); (10/22/2019, 10/25/2019, & 10/29/2019 electronic references). In reaching the conclusions herein, the undersigned has considered the aforementioned motions, the responses to all motions (Docs. 34-1, 39) filed by the Plaintiff Mary Harris ("Harris"), the Defendants' Replies to the Responses (Docs. 40, 41, 42), and related exhibits.

## I.   <u>Applicable Legal Standards</u>

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted," the Court construes the complaint in the light most favorable to the plaintiff, "accepting all well-pleaded facts that are alleged therein to be true." *Miyahira v. Vitacost.com, Inc.*, 715 F.3d 1257, 1265 (11th Cir. 2013) (citing *Bickley v. Caremark RX, Inc.*, 461 F.3d 1325, 1328 (11th Cir. 2006)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))). That "standard 'calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the claim." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but [rather] asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendants liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Iqbal*, 556 U.S. at 678, quoting *Twombly*, 550 U.S. at 556 (internal citations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679, quoting in part FED. R. CIV. P. 8(a)(2).

FED. R. CIV. P. 8(a)(2) generally sets the benchmark for determining whether a complaint's allegations are sufficient to survive a Rule 12(b)(6) motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) ("Under [Rule] 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.' As the Court held in *Twombly*, . . . the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation.").

Indeed, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557); *compare Speaker*, 623 F.3d at 1381 ("[G]iven the pleading standards announced in *Twombly* and *Iqbal*, [plaintiff] must do more than recite statutory elements in conclusory fashion. Rather, his allegations must proffer ***enough factual content*** to 'raise a right to relief above the speculative level.'" (emphasis added)), *with Robinson v. Correctional Med. Assocs., Inc.*, Civil Action No. 1:09–cv–01509–JOF, 2010 WL 2499994, at *2 (N.D. Ga. June 15, 2010) ("Factual allegations in a complaint ***need not be detailed but*** 'must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'" (quoting *Twombly*, 550 U.S. at 555 (internal citations and emphasis omitted and added))).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is

plausible on its face.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief. . . .

[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss.  Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief.

*Iqbal*, 556 U.S. at 678-79 (internal citations and quotation marks omitted); *compare id.* at 680 (a plaintiff must nudge his claims "across the line from conceivable to plausible."), *with Patel v. Georgia Dep't BHDD*, 485 F. App'x 982, 983 (11th Cir. Aug. 8, 2012) (per curiam) ("In order to survive a motion to dismiss, a plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face,' rather than merely conceivable." (quoting *Twombly*, 550 U.S. at 570)).  In addition to the pleading requirements of Rule 8, FED. R. CIV. P. 10(b) provides that "[i]f doing so would promote clarity, each claim founded on a separate transaction or occurrence . . . must be stated in a separate count."

## II.   <u>Well-Pleaded Allegations & Causes of Action</u>

Plaintiff Harris, an African-American, is a former Assistant Librarian and Interim Director of the Monroeville Library, for which she worked from 1980 until her termination on September, 11, 2017. (Doc. 1, PageID.2-4, ¶¶ 9, 16).  The Board oversees the library's operation.  (*Id.*, PageID.3, ¶ 12).  At all times relevant to the

complaint, Pridgen served as Chairman of the Board, while Powell, Stacey, and Sanders served as Board members.  (*Id.*, ¶¶ 12-15).

Beginning in January 2016, Harris served as interim Library Director. (*Id.*, PageID.5, ¶ 23).  In September 2016, Harris formally applied to become the Library Director, presenting letters from a cross section of the community advocating for her selection.  (*Id.*, ¶¶ 23-24).  The Board refused to formally give Harris the "Director" title, though she received the appropriate pay for the Director job while serving as interim Director.  (*Id.*, ¶¶ 26 – 27).  In refusing to formally make Harris Library Director, Pridgen told Harris that she could not be officially promoted because she was "a dinosaur" and that the library needed someone with "fresh ideas and youthfulness." (*Id.*, ¶ 28).

After applying for the Library Director position, Harris was subjected to hostile acts from Board members.  (*Id.*, ¶ 30).  The Board requested that the local District Attorney investigate Harris over library finances from the 2012-2015 time period, even though Harris was not serving as Library Director during that time frame, forcing Harris to hire an attorney at her expense to respond to the district attorney's subpoena.  (*Id.*, PageID.6, ¶¶ 31-32). Stacey made public allegations on Facebook, in the local newspaper, and on radio disparaging Harris's job performance, claiming she had stolen money. (*Id.*, ¶ 33).  Stacey also verbally abused Harris and disparaged her job performance in front of library patrons, causing patrons to be concerned for Harris. (*Id.*, ¶ 34, 36).  On August 2017, the District Attorney declined to bring charges over the 2012-2015 library finances. (*Id.*, ¶ 38).

Harris then filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission (EEOC) protesting her treatment. (*Id.*, ¶ 39). The charge also contained an allegation that the library hosted a celebration event in honor of the Confederate flag that was attended by "70 known affiliates of the KKK." (*Id.*, PageID.4, ¶ 18). Harris and other patrons were upset and distressed that the library was being used to host the Confederate flag celebration. (*Id.*). After receiving the EEOC charge, the Board terminated Harris without further inquiry. (*Id.*, ¶ 19). Harris's termination letter, signed by each Board member, acknowledged receipt of the EEOC charge and shock at the allegation about "known affiliates of the KKK," explaining that women are excluded from being KKK members. (*Id.*, ¶ 20). The letter also stated that unnamed attendees of the meeting were upset and planned to sue over the contents of Harris's EEOC charge, though the letter did not explain how the contents of the charge were shared. (*Id.*, PageID.5, ¶ 22). Harris was replaced with a white female who was in the same age range as her. (*Id.*, ¶ 29).

Based on the foregoing allegations, Harris alleges the following causes of action:

- <u>Count 1</u> – causes of action under 42 U.S.C. §§ 1983, 1981, and 1981a, against all Defendants;

- <u>Count 2</u> – cause of action under 42 U.S.C. § 1983 for violation of the Equal Protection clause of the Fourteenth Amendment to the U.S. Constitution "(and/or the rights or privileges otherwise guaranteed to her by federal law)" (Doc. 1, PageID.9), against all Defendants;

- <u>Count 3</u> – racial discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, against MCC only; and

- <u>Count 4</u> – libel, slander, and defamation, against Stacey only.

## III.   <u>Analysis</u>

In addition to arguing that the Defendants' various motions to dismiss should be denied, Harris also argues, in the alternative, that she be allowed to file an amended complaint, and has attached a proposed amended complaint to her first response (*see* Doc. 34-3).  Only MCC notes the amended complaint in its reply, and no defendant substantively addresses the allegations in the proposed amended pleading.  Accordingly, in addressing the defendants' various arguments for dismissal, the undersigned will consider whether the amended complaint cures or otherwise addresses the claimed deficiencies.

### A.       Alabama's Volunteer Service Act

Alabama's Volunteer Service Act (VSA), Ala. Code § 6-5-336, provides that "[a]ny volunteer shall be immune from civil liability in any action on the basis of any act or omission of a volunteer resulting in damage or injury if: (1) The volunteer was acting in good faith and within the scope of such volunteer's official functions and duties for a nonprofit organization, a nonprofit corporation, hospital, or a governmental entity; and (2) The damage or injury was not caused by willful or wanton misconduct by such volunteer." Ala. Code § 6-5-336(d).  For purposes of the VSA, a "volunteer" is "[a] person performing services for a nonprofit organization, a nonprofit corporation, a hospital, or a governmental entity without compensation,

other than reimbursement for actual expenses incurred. The term includes a volunteer serving as a director, officer, trustee, or direct service volunteer." *Id.* § 6-5-336(c)(4). Stacey, Pridgen, Powell, and Sanders all argue that, as volunteers, they are immune from the claims asserted against them in the complaint.

The VSA only provides immunity for volunteers whose misconduct was not "willful or wanton." *Id.* § 6-5-336(d)(2). First, because the VSA appears to be an affirmative defense, Harris is not required to plead facts expressly negating its application. *See Quiller v. Barclays Am./Credit, Inc.*, 727 F.2d 1067, 1069 (11th Cir. 1984) ("Generally, the existence of an affirmative defense will not support a motion to dismiss."), *on reh'g*, 764 F.2d 1400 (11th Cir. 1985) (en banc) (affirming and reinstating the panel opinion). Second, while "a complaint may be dismissed under Rule 12(b)(6) when its own allegations indicate the existence of an affirmative defense," the defense must "clearly appear[] on the face of the complaint." *Id.* Here, construing the complaint's allegations in the light most favorable to Harris, as the Court must, at least some of Stacey, Pridgen, Powell, and Sanders's alleged conduct could plausibly be considered "willful" or "wanton."[1] Accordingly, the VSA does not

---

[1] *See Brewer v. Atkinson*, 262 So. 3d 663, 670–71 (Ala. Civ. App. 2018):

Willfulness is not equivalent to wantonness. <u>Lyons v. Walker Reg'l Med. Ctr.</u>, 868 So. 2d 1071 (Ala. 2003). That is, proof that one had " 'knowledge and consciousness that the injury is likely to result from the act done or from the omission to act,' " <u>Mazda Motor Corp. v. Hurst</u>, 261 So. 3d 167, 189 (Ala. 2017) (quoting <u>Ex parte Dixon Mills Volunteer Fire Dep't, Inc.</u>, 181 So. 3d 325, 333 (Ala. 2015) ), although sufficient to establish wantonness, is not sufficient to establish that one has acted willfully. To be sure, more recent cases have, in discussions of wantonness, discussed "willful and wanton" or "willful or wanton" conduct as if the two are simply interchangeable terms for the same

provide a basis for dismissing Harris's claims against Stacey, Pridgen, Powell, and

Sanders under Rule 12(b)(6).[2]

---

level of culpability. See, e.g., Mazda Motor Corp., 261 So. 3d at 188-93 (discussing the proof required to support a claim of wantonness); see also Ex parte Dixon Mills Volunteer Fire Dep't, 181 So. 3d at 333 (discussing whether the defendant had engaged in "willful or wanton misconduct" under Ala. Code 1975, § 6–5–336(d)(2)). However, we do not perceive these sometimes confusing statements as an intent to change the long-standing law governing the separate concepts of willfulness and wantonness.

> "An approved definition of wantonness is the conscious failure of one charged with the duty to exercise due care and diligence, to prevent an injury after discovery of peril. Or, under circumstances where one is charged with the knowledge of such peril, and conscious that injury will likely, probably or inevitably result from his actions, or his failure to act, he does not take the proper precautions to prevent injury.

> "To constitute 'willful or intentional injury,' there must be knowledge of danger accompanied with a design or purpose to inflict injury, whether the act be one of omission or commission. To constitute 'wantonness' the design may be absent if the act is done with knowledge of its probable consequence and with a reckless disregard of those consequences."

English v. Jacobs, 263 Ala. 376, 379, 82 So. 2d 542, 544–45 (1955); see also Porterfield v. Life & Cas. Co. of Tennessee, 242 Ala. 102, 105, 5 So. 2d 71, 73 (1941).

[2] Though Harris does not raise this point, the undersigned is also dubious that the VSA, a state law, can serve to immunize these defendants from the federal causes of action asserted against them in Counts 1 and 2, given that federal law is the supreme law of the land.   Stacey, Pridgen, Powell, and Sanders do not attempt to provide an answer, instead simply citing to Ewing v. Moore, No. 7:17-CV-00743-LSC, 2018 WL 3852297 (N.D. Ala. Aug. 13, 2018).  While the district court in Ewing did dismiss § 1983 claims based on VSA immunity, it did so without any explanation of how the VSA could serve to trump federal law.  See 2018 WL 3852297, at *8-9.

## B.    Libel, Slander, and Defamation

Under Alabama law, "[t]he elements of a cause of action for defamation are: 1) a false *and* defamatory statement concerning the plaintiff; 2) an unprivileged communication of that statement to a third party; 3) fault amounting at least to negligence on the part of the defendant; and 4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication of the statement." *McCaig v. Talladega Pub. Co.*, 544 So. 2d 875, 877 (Ala. 1989) (emphasis in original).  Stacy argues that the libel, slander, and defamation claims against him in Count 4 are due to be dismissed because, *inter alia*, Harris fails to allege that any of his alleged defamatory statements were false.  On this point, the undersigned agrees.

Harris alleges that, after the local District Attorney opened an investigation into 2012-2015 library finances, "Stacey publicized allegations on Facebook, in the local newspaper, on the radio disparaging Harris' job performance claiming she had stolen money."  (Doc. 1, PageID.6).  However, nowhere in her complaint, or in her proposed amended complaint, does Harris ever allege that Stacey's statements were false.  While Harris appears to ask the Court to infer falsity based on the fact that the District Attorney declined to bring any charges based on the investigation, that decision could have been made for any number of reasons that have no bearing on the truthfulness of Stacey's claims of theft by Harris (e.g., statute of limitations issues,

insufficiency or staleness of evidence uncovered, prosecutorial discretion).[3]  Because Harris's well-pleaded facts in support of her Count IV claims "do not permit the court to infer more than the mere possibility of misconduct, [her] complaint has alleged— but it has not shown—that she is entitled to relief on her libel, slander, and defamation claims.  *Iqbal*, 556 U.S. at 679.  *See also Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) ("[T]he Court held in *Iqbal*, as it had in *Twombly*, that courts may infer from the factual allegations in the complaint obvious alternative explanations, which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." (quotation omitted)).  For this reason, Count 4 is due to be dismissed under Rule 12(b)(6).[4]

### C.    Section 1981 & 1981a Claims

In Count 1, Harris alleges claims against all defendants under §§ 1981 and 1981a, in addition to claims under § 1983.  Section 1981a does not provide an independent cause of action, but rather was part of a 1991 amendment to Title VII specifying what kinds of damages are available for violations of that law.  *See King v.*

---

[3] Harris argues that an accusation of theft is defamation *per se* under Alabama law. *See Nelson v. Lapeyrouse Grain Corp.*, 534 So. 2d 1085, 1091–92 (Ala. 1988) ("Spoken words that impute to the person of whom they are spoken the commission of an indictable criminal offense involving infamy or moral turpitude constitute slander actionable per se. An oral publication imputing a crime of larceny falls within this definition." (citations omitted)).  However, classifying defamation as *per se* simply means that the statement is "actionable without having to prove special harm[,]" *id.* at 1091, and does not relieve a plaintiff of the burden of showing that the statement was false.

[4] Accordingly, the undersigned finds it unnecessary to address Stacey's additional argument that Harris has failed to sufficiently allege that he acted at least negligently in publishing any of the alleged defamatory statements.

*Fulton Cty., Ga.*, No. CIV.A. 1:08CV3729TWT, 2009 WL 1322341, at *1 (N.D. Ga. May 11, 2009) ("42 U.S.C. § 1981a was part of the Civil Rights Act of 1991 and amends Title VII. *West v. Boeing Co.*, 851 F. Supp. 395, 398 (D. Kan. 1994) (explaining the difference between § 1981 and § 1981a). Section 1981a authorizes the recovery of compensatory and punitive damages to remedy intentional employment discrimination, as an additional remedy to equitable relief provided under Title VII. Section 1981a is not a separate statutory violation. It merely provides additional remedies for violations of Title VII. *Id.*").

As for § 1981, the Eleventh Circuit has "held that § 1981 does not provide an implicit cause of action against state actors; therefore, § 1983 constitutes the exclusive federal remedy for violation by state actors of the rights guaranteed under § 1981." *Bryant v. Jones*, 575 F.3d 1281, 1288 n.1 (11th Cir. 2009) (citing *Butts v. County of Volusia*, 222 F.3d 891, 894–95 (11th Cir. 2000)). As all defendants here are state actors, the undersigned must proceed against them solely under § 1983 rather than § 1981.

Accordingly, Harris's §§ 1981 and 1981a claims are due to be dismissed under Rule 12(b)(6).

## D.   *Respondeat Superior*

MCC argues that the § 1983 claims against it in Counts 1 and 2 are due to be dismissed because Harris has failed to allege sufficient facts plausibly suggesting that she is attempting to establish MCC's liability under any theory other than an impermissible *respondeat superior* theory. The undersigned agrees.

> The Supreme Court has placed strict limitations on municipal liability under § 1983. A county's liability under § 1983 may not be based on the doctrine of respondeat superior. *City of Canton v. Harris,* 489 U.S. 378, 385, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989); *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L.Ed.2d 611 (1978). A county is "liable under section 1983 only for acts for which [the county] is actually responsible." *Marsh v. Butler County,* 268 F.3d 1014, 1027 (11th Cir.2001) (*en banc* ). Indeed, a county is liable only when the county's "official policy" causes a constitutional violation. *Monell,* 436 U.S. at 694, 98 S. Ct. 2018. Thus, [a plaintiff] must "identify a municipal 'policy' or 'custom' that caused [his] injury." *Gold v. City of Miami,* 151 F.3d 1346, 1350 (11th Cir.1998) (quotation marks omitted) (alteration in original) (citing *Bd. of County Comm'rs v. Brown,* 520 U.S. 397, 403, 117 S. Ct. 1382, 137 L.Ed.2d 626 (1997)).

*Grech v. Clayton Cty., Ga.*, 335 F.3d 1326, 1329 (11th Cir. 2003). "A plaintiff, like [Harris], has two methods by which to establish a county's policy: identify either (1) an officially promulgated county policy or (2) an unofficial custom or practice of the county shown through the repeated acts of a final policymaker for the county." *Id.*

Harris, however, has failed to identify any policy supporting MCC's liability under § 1983. Indeed, beyond the fact that MCC appointed the Board member defendants, Harris has failed to allege any facts, in either her operative complaint or her proposed amended complaint, indicating how MCC was involved in the events underlying her claims.[5] Accordingly, Harris's § 1983 claims against MCC in Counts 1 and 2 are due to be dismissed under Rule 12(b)(6).

---

[5] Harris claims she is not pursuing a "a respondent [sic] superior theory" against MCC, but then in the very next paragraph asserts that MCC should be liable for the actions of the Board because it "is appointed exclusively by the Monroe County Commission[,]" which is the epitome of *respondeat superior* liability. (Doc. 34-1, PageID.168-169). The sole district court opinion Harris cites in support of her contention that MCC can be sued solely based on the Board's actions, *Cobb v. Montgomery Library Board*, 207 F. Supp. 880 (M.D. Ala. 1962), was issued over fifteen years before the United States Supreme Court made clear in *Monell v. Department of Social Services*, 436 U.S. 658 (1978), that municipal liability under §

## E.     The Board's Capacity to Be Sued

The Board claims that all claims against it are due to be dismissed because it is not an independent legal entity capable of being sued.  The undersigned, however, is not persuaded.  Alabama law provides that "[t]he county commissions of the counties of this state and municipalities, through their governing bodies, may establish and maintain or aid in establishing and maintaining free public libraries for the use of the citizens of the respective counties or municipalities[,]" Ala. Code § 11-90-1, with "[t]he government and supervision of such libraries … vested in a library board consisting of five members who shall be appointed by the county commission or the governing body of the municipality." Ala. Code § 11-90-2.  Such library boards "have full power and authority to: (1) Control the expenditure of all funds received or appropriated for such libraries; (2) Erect or rent buildings to cost not in excess of the funds available to it; (3) Purchase books and equipment; (4) Provide a system of library service to be made easily available to all citizens of the county or municipality through central library, branches, stations, book truck service,

---

1983 could not be premised on *respondeat superior*.  *See also Pembaur v. City of Cincinnati*, 475 U.S. 469, 479–80 (1986) ("The 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible. *Monell* reasoned that recovery from a municipality is limited to acts that are, properly speaking, acts 'of the municipality'— that is, acts which the municipality has officially sanctioned or ordered.").  Moreover, as MCC correctly points out, the court in *Cobb* ultimately found the defendant Montgomery city commissioners could be liable for the actions of the library board they appointed because, the court found, all defendants were pursuing a discriminatory policy, custom or usage, which is consistent with what *Monell* requires to show municipal liability under § 1983.

or other appropriate means; (5) Elect a librarian and other employees; and (6) Manage and control the said library…" Ala. Code § 11-90-3(a). These statutes strongly indicate that the Board has the capacity to be sued, and the Board fails to address them.[6] Accordingly, dismissal under Rule 12(b)(6) is not warranted based on the Board's assertion it lacks the capacity to be sued.

### F. Title VII Employer

Title VII prohibits discriminatory behavior by "employers." 40 U.S.C. § 2000e-2(a). "Under Title VII, an 'employer' is defined as 'a person engaged in an industry affecting commerce who has fifteen or more employees ... and any agent of such a person.' 42 U.S.C. § 2000e(b). A 'person' includes 'individuals, governments,

---

[6] The lone case the Board cites in support of its argument that it is not capable of being sued, *Murdock v. Birmingham Jefferson City Transit Authority*, No. 2:18-CV-00808-KOB, 2018 WL 5923766 (N.D. Ala. Nov. 13, 2018), is unpersuasive for several reasons. First, that case concerned the Board of Directors of the Birmingham Jefferson County Transit Authority (BJCTA), not a library board organized under the aforementioned statutes. Second, *Murdock* found that "no law establishes the Board's legal existence separate from BJCTA[,]" 2018 WL 5923766, at *3, but here the aforementioned Alabama statutes strongly suggest that Alabama library boards do have a separate legal existence from the governmental entities that appoint them. Third, while *Murdock* asserted that "numerous cases recognize that a board is not the appropriate entity to sue[,]" the court cited only two decisions in support of that statement, one of which, *United States v. Olavarrieta*, 812 F.2d 640 (11th Cir. 1987) (per curiam), reached the exact opposite conclusion. *See Olavarrieta*, 812 F.2d at 643 (finding that the Board of Regents as the head of Florida's university system, and not the University of Florida itself, was an entity "endowed with an independent corporate existence or the capacity to be sued in its own name"). The other case *Murdock* relied on, *Kelley v. Troy State University*, 923 F. Supp. 1494 (M.D. Ala. 1996), found that the Board of Directors of Troy State University did not have the capacity to be sued, with "that status … reserved for Troy State University itself[,]" but based this decision on an Alabama statute specific to Troy State University. *See* 923 F. Supp. at 1499. As noted above, the statutes specific to Alabama library boards are strongly indicative of a capacity to be sued. *See Olavarrieta*, 812 F.2d at 643 ("The capacity to be sued is determined by state law." (citing Fed. R. Civ. P. 17(b))).

governmental agencies, [and] political subdivisions....' 42 U.S.C. § 2000e(a)." *Peppers v. Cobb Cty., Ga.*, 835 F.3d 1289, 1295 (11th Cir. 2016). MCC moves to dismiss the Title VII claims asserted against it in Count 3 because it was not Harris's "employer."

Harris submitted 2 charges of discrimination to the EEOC prior to filing this suit, both naming "Monroe County Public Library" as the discriminating entity. (*See* Doc. 34-2, PageID.183-184, 186). In the right-to-sue letters issued on each of those charges, the EEOC represented that it was closing its file on the charge because the Monroe County Public Library "employs less than the required number of employees or is not otherwise covered by the statute." (*Id.*, PageID.182, 185). In her complaint, Harris asserts that MCC is her employer for purposes of Title VII. In her proposed amended complaint, however, Harris argues that the Board and MCC should be considered a single employer for purposes of Title VII.

Courts in this circuit "accord a liberal construction to the term 'employer' under Title VII. In keeping with this liberal construction, we sometimes look beyond the nominal independence of an entity and ask whether two or more ostensibly separate entities should be treated as a single, integrated enterprise when determining whether a plaintiff's 'employer' comes within the coverage of Title VII." *Lyes v. City of Riviera Beach, Fla.*, 166 F.3d 1332, 1341 (11th Cir. 1999) (en banc) (citations omitted).

> [W]hen assessing whether multiple governmental entities are a single "employer" under Title VII, we begin with the presumption that governmental subdivisions denominated as separate and distinct under state law should not be aggregated for purposes of Title VII. That presumption may be rebutted by evidence establishing that a governmental entity was structured with the purpose of evading the reach of federal

> employment discrimination law. Absent an evasive purpose, the presumption against aggregating separate public entities will control the inquiry, unless it is clearly outweighed by factors manifestly indicating that the public entities are so closely interrelated with respect to control of the fundamental aspects of the employment relationship that they should be counted together under Title VII.

*Id.* at 1345. "Useful 'indicia of control' may be drawn from the agency context, including: ' "the authority to hire, transfer, promote, discipline or discharge; the authority to establish work schedules or direct work assignments; [and] the obligation to pay or the duty to train the charging party." ' " *Id.* (quoting *Oaks v. City of Fairhope, Ala.*, 515 F. Supp. 1004, 1035 (S.D. Ala. 1981) (quoting Barbara Schlei and Paul Grossmann, Employment Discrimination Law 846 (1st ed. 1976))).

As the Alabama statutes noted above in Section III(D) make clear, library boards are separate and distinct from the county commissions or municipal authorities that create them. They are vested with the "full power and authority to … [e]lect a librarian and other employees[,]" and to otherwise "manage and control" its libraries. Ala. Code § 11-90-3(a). While a county commission is charged with appointing the library board, *see* Ala. Code § 11-90-1, nothing in the statute indicates that a commission possesses any separate authority to review or otherwise control a library board's hiring, firing, and promotion decisions. Indeed, a county commission does not even possess the ability to hire and fire library board members at will, instead appointing them for fixed terms of office. *See* Ala. Code § 11-90-2. Based on the foregoing Alabama statutes, another judge of this district previously found that a library board should not be considered a joint employer with the municipality that appointed it. *See Oaks*, 515 F. Supp. at 1035-37. Moreover, as noted above in Section

III(C), Harris has failed to allege facts indicating that MCC had any direct involvement in any of the events underlying her causes of action.

In sum, Harris has failed to plausibly show that MCC and the Board are so closely interrelated with respect to control of the fundamental aspects of Harris and the Board's employment relationship that the presumption against aggregating those two entities for Title VII purposes is overcome.[7]  For this reason, the Title VII claims against MCC in Count 3 are due to be dismissed under Rule 12(b)(6).[8]

---

[7]     Harris claims that, because she began working for the Monroe County library when it was still controlled by MCC and before the Board's creation, "her Title VII protections should by grandfathered-in." (Doc. 34-1, PageID.175).  Harris fails to cite any authority or offer any substantive reasoning in support of this novel theory, and the undersigned is not persuaded, particularly given that a "Title VII workplace discrimination claim can only be brought by an employee against his employer[,]" which is the person or entity that " 'is in control of the fundamental aspects of the employment relationship that gave rise to the claim.' " *Peppers*, 835 F.3d at 1297 (quoting *Lyes*, 166 F.3d at 1345).  In short, Harris cannot hold a past employer liable for the actions of the employer that committed the discriminatory acts at issue.

Harris also argues that the Court should infer MCC created the Board with evasive intent because it was created only seven months after the *Oaks* decision was issued.  However, the relevant inquiry for evasive intent is whether the State of Alabama granted county commissions and municipalities the ability to create library boards for the purpose of evading Title VII.  *See Lyes*, 166 F.3d at 1344 ("There are few things closer to the core of a state's political being and its sovereignty than the authority and right to define itself and its institutions in relation to each other. Of course, states cannot abuse that power to evade federal law, but it is unlikely that a state would structure its state and local entities with that purpose in mind … [I]f it is established that a state's purpose in creating or maintaining nominally separate entities was to evade the reach of the federal employment discrimination laws, that alone is enough for those entities to be aggregated when counting employees.").  Here, MCC points out, and Harris agrees, that the last amendments to the statutes governing the creation and authority of library boards occurred in 1939, before Title VII was even enacted.  Accordingly, Harris has failed to plausibly show evasive intent by the state.

[8]     In both of her pre-suit EEOC charges, Harris listed the Monroe County Public Library as the entity that discriminated against her, and did not otherwise mention

Moreover, because Harris appears to concede the EEOC's findings that the Monroe County Public Library does not employ the requisite number of employees to be considered an "employer" subject to Title VII, her proposed amendment to her complaint adding the Board to her Count 3 Title VII claims should be denied as futile.[9]

---

MCC. (*See* Doc. 34-2, PageID.183-184, 186).  MCC has argued that Harris's Title VII claims against it are also due to be dismissed for failure to name MCC in her EEOC charges.

"Ordinarily, a party not named in the EEOC charge cannot be sued in a subsequent civil action.  This naming requirement serves to notify the charged party of the allegations and allows the party an opportunity to participate in conciliation and voluntarily comply with the requirements of Title VII.  However, courts liberally construe this requirement. Where the purposes of the Act are fulfilled, a party unnamed in the EEOC charge may be subjected to the jurisdiction of federal courts." *Virgo v. Riviera Beach Assocs., Ltd.*, 30 F.3d 1350, 1358-59 (11th Cir. 1994) (citations omitted).  "In order to determine whether the purposes of Title VII are met, courts do not apply a rigid test but instead look to several factors including: (1) the similarity of interest between the named party and the unnamed party; (2) whether the plaintiff could have ascertained the identity of the unnamed party at the time the EEOC charge was filed; (3) whether the unnamed parties received adequate notice of the charges; (4) whether the unnamed parties had an adequate opportunity to participate in the reconciliation process; and (5) whether the unnamed party actually was prejudiced by its exclusion from the EEOC proceedings.  Other factors may be relevant depending on the specific facts of the case." *Id.* at 1359 (citation omitted).

Neither party cites *Virgo* or its multi-factor analysis.  Nevertheless, Harris at least puts forth some argument that touches on a *Virgo* factor, suggesting there may be sufficient similarity of interest between the Monroe County Public Library and MCC to excuse failing to name MCC in her EEOC charges.  MCC, on the other hand, has not attempted, in either its initial brief or its reply, to argue relevant factors weighing against excusing the omission, instead taking the position that failure to name MCC is itself determinative. Accordingly, the undersigned finds that MCC has not sufficiently demonstrated in its present motion that dismissal of Count 3 under Rule 12(b)(6) would be warranted for this reason.

[9] "The U.S. Supreme Court has held that … futility [is an] adequate bas[i]s for denying leave to amend." *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1319 (11th Cir. 1999) (citing *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962)).

### G.    Proposed ADEA Claims

Harris's proposed amended complaint adds a fifth count raising claims of discrimination and retaliation against all defendants in violation of the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. § 621 *et seq.*[10]  Like Title VII, however, the ADEA's prohibitions only apply to a plaintiff's "employer."  *See* 29 U.S.C. § 623.  For the same reasons as with Harris's Title VII claims, Harris has failed to demonstrate that MCC should be considered her employer, either instead of or jointly with the Board.  Moreover, because "there is no individual responsibility" under the ADEA, the Board members cannot be liable under the ADEA in their individual capacities. *Mason v. Stallings*, 82 F.3d 1007, 1009 (11th Cir. 1996).  While the Board members can be sued under the ADEA in their official capacities, such claims would be redundant of those already asserted against the Board, since "[o]fficial-capacity suits … generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quotation omitted).  Accordingly, because Harris's proposed ADEA claims

---

Harris argues that the Board could still be held liable under Title VII as an agent of MCC.  However, because Harris has failed to demonstrate that MCC is his "employer" for Title VII purposes, the Board cannot be held liable under Title VII as an agent of MCC, since only an "agent" of an "employer" is subject to Title VII liability.  *See* 42 U.S.C.A. § 2000e(b) ("The term 'employer' means a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, <u>and any agent of such a person</u>…" (emphasis added)).

[10] Both of Harris's EEOC charges alleged violations of the ADEA as well as Title VII.

would be futile against any defendant but the Board, she should be permitted to amend her complaint to add ADEA claims against the Board only.[11]

## H.   Repleading

The Board and the individual Defendants also press various arguments that Harris has failed to plausibly allege a valid § 1983 claim against them in either Count 1 or 2.  However, they have also argued that Count 2 is an impermissible shotgun pleading for which a more definite statement should be ordered under Federal Rule of Civil Procedure 12(e).  Upon consideration, the undersigned declines to consider, for now, the defendants remaining arguments on the merits of Harris's § 1983 claims, and instead finds that Harris should be made to replead her § 1983 claims to identify with specificity what causes of action she is raising under that statute.

Under Rule 12(e), "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response."  Moreover, Federal Rule of Civil Procedure 10(b) provides: "A party must state its claims or defenses in

---

[11] For purposes of the ADEA, the term "employer" generally "means a person engaged in an industry affecting commerce who has twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year…" 29 U.S.C.A. § 630(b).  However, "[t]he term also means … a State or political subdivision of a State and any agency or instrumentality of a State or a political subdivision of a State, and any interstate agency, but such term does not include the United States, or a corporation wholly owned by the Government of the United States."  *Id.*  The Supreme Court has held that § 630(b)'s "twenty or more employees" confining language "is tied to § 630(b)'s first sentence, and does not limit the ADEA's governance of the employment practices of States and political subdivisions thereof."  *Mount Lemmon Fire Dist. v. Guido*, 139 S. Ct. 22, 24 (2018).  Accordingly, the Board appears to be an "employer" under the ADEA regardless of how many people it employs.

numbered paragraphs, each limited as far as practicable to a single set of circumstances … If doing so would promote clarity, each claim founded on a separate transaction or occurrence … must be stated in a separate count or defense." Complaints that violate Rule 10(b) "are often disparagingly referred to as 'shotgun pleadings.'" *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015). *See also id.* at 1322 (noting that a type of shotgun pleading "is one that commits the sin of not separating into a different count each cause of action or claim for relief). Counts 1 of Harris's current operative complaint alleges at least 3 different causes of action under § 1983, while Count 2 contains a catch-all provision asserting § 1983 claims based on "the rights or privileges otherwise guaranteed to her by federal law" (Doc. 1, PageID.9), in effect alleging all conceivable causes of action under § 1983, regardless of whether the underlying facts support them. Harris's proposed amended complaint suffers from the same defects, and even adds to the jumble by asserting both Equal Protection and Due Process claims in Count 2 (in addition to the same catch-all provision noted above). Such scattershot and open-ended pleading fails to adequately apprise the Defendants or the Court of what claims Harris is asserting, and hampers the Defendants' ability to prepare a response to those claims. Exacerbating this deficiency is the fact that, in both the operative and proposed amended complaint, Harris simply incorporates her statement of facts into each count of the complaint in full, without making clear which allegations are supposed to support which claims. *Cf. Weiland*, 792 F.3d at 1322 (noting that other examples of shotgun pleading are "a complaint containing multiple counts where each

count adopts the allegations of all preceding counts, and one that is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action").

Accordingly, Harris should be ordered to amend her complaint to set forth each cause of action she is asserting under § 1983 in a separate count, and to omit any sort of catch-all provision like the one noted above. In the interest of consistency, Harris should also be ordered to allege her claims for discrimination and retaliation under the ADEA in separate counts as well. For each separate count, Harris must identify with reasonable specificity the factual allegations that support the asserted claim.

## IV.   **Conclusion & Recommendations**

In accordance with the foregoing analysis, the undersigned **RECOMMENDS** the following:

1. that MCC's Rule 12(b)(6) motion to dismiss (Doc. 15) be **GRANTED** as to all claims against it in this action;

2. that Stacey's Rule 12(b)(6) motion to dismiss (Doc. 33) be **GRANTED** as to the libel, slander, and defamation claims in Count 4 of the complaint, and as to the §§ 1981 and 1981a claims in Count 1; **DENIED** as to his assertions of immunity under the Alabama Volunteer Service Act; and **DENIED without prejudice** as to his remaining arguments to allow Harris the opportunity to file an amended complaint;

3. that the Board, Powell, Pridgen, and Sanders's Rule 12(b)(6) motion to dismiss (Doc. 35) be **GRANTED** as to the §§ 1981 and 1981a claims in Count 1;

**DENIED** as to assertions of immunity under the Alabama Volunteer Service Act and the Board's lack of capacity to be sued; and **DENIED without prejudice** as to their remaining arguments to allow Harris the opportunity to file an amended complaint;

4. that Harris be **DENIED** leave to amend her complaint to assert Title VII causes of action against the Board, and causes of action under the ADEA against any defendant but the Board;

5. that Harris be **GRANTED** leave to amend her complaint to assert the new factual allegations, the new ADEA claims against the Board, and the new causes of action under § 1983 against all defendants except MCC, set forth in her proposed amended complaint (Doc. 34-3);[12] and

6. that, in filing her amended complaint, Harris be required to (1) set forth each distinct cause of action under § 1983 and the ADEA in a separate count, regardless of how many causes of action are asserted under the same statute (e.g., one count asserting racial discrimination under § 1983, one count asserting due process violations under § 1983, one count asserting discrimination under the ADEA, one count alleging retaliation under the ADEA), (2) omit "and/ or the rights or privileges otherwise guaranteed to her

---

[12] In recommending that Harris be allowed to amend her complaint to assert these new claims, the undersigned is expressing no opinion as to whether those claims can ultimately withstand a motion to dismiss or for judgment on the pleadings directed at the amended complaint. Rather, the undersigned simply concludes it is not readily apparent that permitting Harris to assert those claims would be entirely futile at this time.

by federal law" and any similar catch-all provision purporting to assert claims not specifically stated in the amended complaint, and (3) identify with reasonable specificity the factual allegations underlying each separate cause of action.

**DONE** and **ORDERED** this the 22nd day of May 2020.

_/s/ Katherine P. Nelson_
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.