## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **MARY A. HARRIS**, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) **CIVIL ACTION NO. 19-265-CG-N** |
| | ) |
| **MONROE COUNTY PUBLIC** | ) |
| **LIBRARY BOARD OF** | ) |
| **TRUSTEES**, ***et al.***, | ) |
| | ) |
| Defendants. | |

## <u>MEMORANDUM OPINION AND ORDER</u>

This matter is before the court on Defendants', Monroe County Public Library

Board of Trustees (the "Board"), Shannon Powell ("Powell"), Ann Pridgen

("Pridgen"), and Jerome Sanders ("Sanders"), Motion for Summary Judgment (Doc.

95), and Defendant Steve Stacey's ("Stacey") Motion for Summary Judgment (Doc.

96), Plaintiff's response in opposition (Doc. 100), and Defendants' replies (Docs. 102

and 103).  For the reasons explained below, the Court finds that Defendants'

motions for summary judgment should be GRANTED.

## FACTS

The Monroe County Library Board is a non-profit corporation

organized on December 28, 1981 in Monroe County, Alabama. (Doc. 94-1).  The

Monroe County Library ("Library") is governed by a Board of Directors, consisting of

five members who are selected by the County Commission of Monroe County,

Alabama. (Doc. 94-2; PageID.513; Doc. 94-3; PageID.515) The Board's members serve four-year terms without compensation. (*Id*.)  The Board alone has sole authority to hire and terminate Library employees. (Doc. 94-4, PageID.563). In addition, no single member of the Board has the authority to terminate an employee. (*Id*. at PageID.564).

Stacey was appointed to the Board in October 2016 and served as a member of the Board until March 8, 2018. (Doc. 94-3, PageID.515). Stacey was not involved in any Library personnel or employment-related decisions or deliberations prior to his appointment to the Board in October 2016. (*Id*.) Stacey has never been an employee of the Library. (*Id*.)

Plaintiff, Brenda Harris ("Harris") is an African American female who worked for the Monroe County Library from 1981 until September 2017.  (Doc. 94-4 at 13-15; PageID.558-60).  During the course of her career, Harris held the positions of assistant librarian children coordinator and a public relations position.  (*Id*.)  In January 2016, following the retirement of the Library's Director, Harris was appointed by the Board to serve as Interim Library Director.  (Doc. 94-4 at 17; PageID.562).  Harris understood her position as interim director was temporary until a permanent director could be selected by the Board and Harris understood that the Board could ultimately hire someone other than her as Director.  (*Id*.)

**The Hiring Process**[1]

---

[1] The facts relating to the hiring process were presented solely by Defendants and

In September 2016, the Library announced in the Monroe Journal that it was accepting applications for the position of Director. (Doc. 94-5 at 1, 3; PageID.640, 642). Harris formally applied for the Director position. (Doc. 100 at 3; PageID.688; Doc. 94-4 at 89-92; PageID.634-37). Anne Pridgen ("Pridgen") sent all applications received for the position to the Alabama Public Library Service ("APLS") in Montgomery, Alabama, and the APLS narrowed the candidates down to three individuals: Harris, Crystal Reynolds ("Reynolds"), a white female and Brenda Taite ("Taite"), an African American female. (Doc. 94-5 at 1; PageID.640.)

On October 24, 2016, the Board conducted interviews of Harris, Reynolds, and Taite, for the Director position. (Doc. 94-3 at 2; PageID.516). The interview process consisted of: (i) the submission of written responses to "Supplemental Questions," which requested information regarding each candidate's qualifications, skills, and experience; (ii) the submission of a typed response to the following prompt in order to assess each candidate's computer-processing skills: "Monroe County is the Literary Capital of Alabama. What would you do to promote this title"; and (iii) an in-person interview with the members of the Board. (*Id*.)

Harris completed her in-person interview on October 24, 2016, and submitted her written responses to the Supplemental Questions. (*Id*.) However, the Board members did not receive a copy of any typed response from Harris to the computer-processing prompt, and Stacey is unaware of Harris ever having completed the

_____

were not disputed by Plaintiff.

3

prompt. (*Id*.) Harris testified that she delivered a response to the prompt to a Library employee. (Doc. 94-4 at 34-43; PageID.579-88).

Each member of the Board scored each of the three candidates' performance under the following three categories out of a total of 100 points: Application Process (20 maximum points), Interview Questions (60 maximum points), and Task Total (20 maximum points). (Doc. 94-3 at 2; PageID.516). Harris's total score ranged from 43 to 63 for each of the Board members; Taite's total score ranged from 64 to 80 for each of the Board members; and Reynolds' total score ranged from 90 to 99 for each of the Board members. (*Id*.) The total combined score provided by all of the Board members for each of the candidates was as follows: Harris – 200 points; Taite – 296 points; Reynolds – 380 points. (*Id*.)

Based on each candidate's performance in the interview process and the Board's consideration of each candidate's educational background and experience, the Board unanimously decided that Reynolds was the most qualified candidate for the Director position. (Doc. 94-5 at 1; PageID.640). Stacey's personal opinion and determination was that Reynolds was far more qualified for the Director position than either Harris or Taite based on his consideration of each candidates' performance on each aspect of the interview process. (Doc. 94-3 at 3; PageID.517). Stacey understood that Reynolds had experience working for the Wilcox County Library since 1991 and had developed significant experience in Library information technology systems, which was an area in which the Library needed significant

4

improvement. (*Id.*) Stacey also determined that neither Harris nor Taite had equivalent experience in information technology systems and further believed that Reynolds' interview and written responses were more impressive than those of Harris (who Stacey understood had failed to complete an entire component of the interview process) and Taite. (*Id.*)  On these bases, Stacey determined that Reynolds the most qualified candidate for the Director position. (*Id.*)

On October 28, 2016, Pridgen offered the position of Director to Reynolds. (Doc. 94-5 at 1; PageID.640). At the time Reynolds was offered the position, she was 47 years old.  (*Id.*)  Also on October 28, 2016, Pridgen sent a letter to Harris thanking her for her interest in the position of Director and explaining that "this position has been offered to another candidate." (*Id.*; Doc. 94-5 at 4; PageID.643). Harris received the October 28, 2016 letter and "learned that [she] had not been selected on October 28, 2016." (Doc. 94-4 at 44-45, 93; PageID.589-90, 638).  Harris also knew in 2016 that the position had been offered to Reynolds, who Harris knew at the time was white. (Doc. 94-4 at 46; PageID.591). Harris was aware as of October 28, 2016, that Stacey had been involved in the process of selecting the new Director for the Library. (*Id.* at 45-46; PageID.590–91). Harris testified that she believed Reynolds was selected for the Director position based on her race because she was white, young, and a friend of Beverly Colquett, who was a volunteer of the Library. (*Id.* at 37, 47; PageID.582, 592).

**Events leading up to Termination**

Prior to and during Stacey's tenure on the Board, the Library had a policy of hosting a program in conjunction with every State-recognized holiday. (Doc. 94-3 at 3; PageID.517).  In April 2017, Stacey organized a program for the Library to celebrate Confederate History Month.  (*Id*.; Doc. 100 at 3; PageID.688).  The program carried the headline, "Celebrate Confederate Memorial Day with the Sons of Confederate Veterans, Camp 1610, of Monroe County."  (*Id*.; Doc. 101-2 at 1; PageID.724).  The program featured lectures by Stacey and Frank Pierce ("Pierce") (former and current commanders of Sons of Confederate Veterans ("SCV") Camp 1610).  (*Id*.)  Pierce's lecture was entitled "CSA Cavalry Equipment & Arms with Discussion of 7th Alabama Calvary in Forrest's[2] Command".  (*Id*.)  Stacey's lecture was entitled "History of Units Raised in Monroe County with a Discussion of Units formed in Neighboring Counties with Men from Monroe".  (*Id*.)  Both lectures were moderated by Stacey. (*Id*.)

The second presentation was attended by seventy individuals.  (Doc. 94-4 at 66; PageID.611).  Harris did not attend the first presentation but did attend a portion of the second presentation. (*Id*. at 62-64; PageID.607–09). Harris testified that during the part of the presentation she observed, there were no racially derogatory terms used, nothing inappropriate stated, and nothing she observed

_____

[2] Plaintiff cites a Wikipedia page and describes Forrest as a Confederate Army general who was considered to be the first grand wizard of the Ku Klux Klan.  (*Id*.)

troubled her. (*Id*. at 64-66; PageID.610–11, 616). However, she testified that the program was hostile to minorities, that she felt threatened during the program, and she was called the N word by one Library patron. (Doc. 94-4 at 71-78; PageID.616-23; Doc. 100 at 7; PageID.692).

On August 4, 2017, Harris filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging that "Mr. Stacy [sic] hosted a program at the Library to celebrate the Confederate Flag and over 70 participants showed up who are known Ku Klux Klan affiliates, which intimidated and frightened me." (Doc. 94-4 at 93; PageID.638). Harris does not know whether anyone in attendance at the April 24, 2017, presentations were affiliates of the Ku Klux Klan, and did not know when she signed her Charge of Discrimination whether a single person who attended the presentations was an affiliate of the Ku Klux Klan. (*Id*. at 79-80; PageID.624–25). The individual who used the n-word was not Stacey and was not affiliated in any way with the Library. (*Id*. at 72; PageID.617). Harris also testified that she did not voice any concerns about the holding of the April 24, 2017 presentations to any Board member prior to the event. (*Id*. at 62; PageID.607)

In or around August 2017, Stacey learned that Harris had filed a Charge of Discrimination (Doc. 94-3 at 3, PageID.517). Around this same time, Stacey and other Board members began to receive complaints from patrons of the Library who were upset at Harris' allegations. (*Id*.) The complaints Stacey received included:

(a) A letter from Loretta McKenzie dated September 8, 2017 explaining she "attended both sessions of the History Program on the Monroe County Count Regiments in the Civil War," that she had "learned about the EEOC complaint which alleges that '70 known members of the KKK' attended," and that she was "highly offended, and extremely upset at the unjust accusation . . . ." ; and

(b) A letter from Ann M. Walker dated September 8, 2017, explaining that she "cannot express the anger first realized by [the] statement" from Harris.

(*Id*. at 29-30; PageID.543-44).  In addition to these and other complaints, one patron threatened legal action on account of Harris's allegation. (*Id*. at 3; PageID.517).

On September 11, 2017, Pridgen requested that Harris attend a Board meeting that was taking place that day. (Doc. 94-5 at 2; PageID.641). It was Pridgen's intention that, during this meeting, the Board would have the opportunity to discuss with Harris her allegations to the EEOC. (*Id*.) Stacey also understood that the issue of Harris's allegation would be discussed with her during this meeting. (Doc. 94-2 at 4; PageID.518).  Prior to the meeting, Pridgen did not inform Harris that she would be terminated.  (Doc. 101-3 at 2; PageID.726).

**Termination**

On September 11, 2017, Harris was present at the Library and was aware that a board meeting was set to take place.  (Doc. 94-5 at 2; PageID.641).  During the meeting, Harris left and walked to the front porch to talk to her attorney by phone.  Harris was asked to rejoin the meeting but declined.  (Doc. 94-5 at 2; PageID.641; Doc. 100 at 5; PageID.690).  While Harris was outside, the Board went into an executive session, during which, Ms. Pridgen recommended Harris be

8

terminated "due to defamation of character concerning the allegations that 70

citizens were members of the KKK…". (*Id.* at 5, 7; PageID.690, 692). The Board

voted to terminate Harris.   Harris was then given a termination letter which stated

in part, as follows:

> Mrs. Harris, when we received the EEOC complaint and read where
> you stated that there were 70 known affiliates of the KKK present, we
> were shocked. Women cannot be members of the KKK. The individuals
> that attended the program mostly women are upset and angry and
> they are planning to seek legal recourse for defamation of character
> [...] Therefore we (the Board) have no choice but to terminate your
> employment effective today.

(*Id.* at 6-7; PageID.691-92; Doc. 94-3 at 31; PageID.545). The letter was signed by

Board Members Ann Pridgen, Jerome Sanders, Steve Stacey, and Shannon Powell.

(*Id.*)

On June 5, 2019, Plaintiff filed the instant action.  (Doc. 1).  At this stage, the

following claims remain:  Count I: 42 U.S.C. § 1983 Violation of Plaintiff's 14th

Amendment Due Process Rights; Count II: 42 U.S.C. § 1983 Violation of Plaintiff's

14th Amendment Equal Protection Rights - Race Discrimination; Count III: 42

U.S.C. § 1983 Violation of Plaintiff's 14th Amendment Equal Protection Rights -

Retaliation; and Count IV:  29 U.S.C. § 621 *et seq* – Age Based Employment

Discrimination.  (Docs. 51, 69, 76).  The Board and Stacey, Powell, Pridgen, and

Sanders seek the entry of a summary judgment in their favor as to Counts I, II, III

and the Board seeks entry of a summary judgment in its favor as to Count IV. [3]

---

[3] Although Plaintiff's Amended Complaint asserts Count IV against all Defendants,

(Docs. 95 and 96).  Plaintiff has responded in opposition (Doc. 100) and Defendants have replied (Docs. 102 and 103).  The matter is ripe for adjudication.

## DISCUSSION

### A.    Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted: "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The trial court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  "The mere existence of some evidence to support the non-moving party is not sufficient for denial of summary judgment; there must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" *Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1243 (11th Cir. 2002) (quoting *Anderson*, 477 U.S. at 249). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, at 249-250. (internal citations omitted).

The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."

---

this Court has previously stricken that claim with respect to the individual defendants.  (*See* Docs. 69 and 76).

*See Anderson*, 477 U.S. at 251-252.  The moving party bears the burden of proving that no genuine issue of material fact exists. *O'Ferrell v. United States*, 253 F.3d 1257, 1265 (11th Cir. 2001).  In evaluating the argument of the moving party, the court must view all evidence in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in its favor. *Burton v. City of Belle Glade*, 178 F.3d 1175, 1187 (11th Cir. 1999).  "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Miranda v. B&B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir. 1992) (citing *Mercantile Bank & Trust v. Fidelity & Deposit Co.*, 750 F.2d 838, 841 (11th Cir. 1985)).

Once the movant satisfies his initial burden under Rule 56(c), the non-moving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." *Howard v. BP Oil Company*, 32 F.3d 520, 524 (11th Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).  Otherwise stated, the non-movant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).  The non-moving party "may not rely merely on allegations or denials in its own pleading; rather, its response .... must be by affidavits or as otherwise provided in this rule be set out specific facts showing a genuine issue for trial." *Vega v. Invsco Group, Ltd.*, 2011 WL 2533755, *2 (11th Cir. 2011).  "A mere

11

'scintilla' of evidence supporting the [non-moving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citation omitted). "[T]he nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 (11th Cir. 1992). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 at 587 (1986) (internal quotation and citation omitted).

### B.   Count I: 42 U.S.C. § 1983 Violation of Plaintiff's 14th Amendment Due Process Rights

Defendants[4] argue that summary judgment is due to be granted as to Count I because Harris had no constitutionally protected property interest in her employment as an at-will employee.  (Doc. 95 at Doc. 96 at 16; PageID.663). Alternatively, Defendants argue that if Harris had a protected property right in her employment, she was given an opportunity to be heard prior to her termination (*Id.*) In response, Plaintiff relies on the Amendments to the Monroe County Library's articles of incorporation which state that library employees "… shall be deemed public employees and entitled to all the benefits and privileges generally afforded

---

[4] The Board and Pridgen, Powell, and Sanders' motion adopts and incorporates the arguments presented in Stacey's Motion. (Doc. 95 at 2; PageID.645).  Accordingly, this Order will refer to the defendants collectively as "Defendants" unless otherwise specified.

public employees in the state of Alabama." (Doc. 100 at 11; PageID.696 citing to

Doc 94-2 at 2; PageID.514). Plaintiff then argues that "public employees in

Alabama are entitled to a pre-termination hearing" and that Plaintiff was not given

a pre-termination hearing. (*Id.*) For legal support, Plaintiff relies on *Galbreath v.*

*Hale Cty., Alabama Comm'n*, 754 F. App'x 820, 825 wherein the court held that "[a]

government employer cannot terminate an employee who possesses a state-created

property interest in employment without due process, including a pretermination

opportunity to respond. (Doc. 100 at 11; PageID.696) (citations omitted).

In *LaFleur v. Hugine*, the Eleventh Circuit explained as follows:

> When analyzing a claim of procedural due process, we address two
> questions: (1) whether the plaintiff had a property interest of which
> she was deprived by state action; and (2) if so, whether she received
> sufficient process concerning that deprivation. *See Ross v. Clayton*
> *Cnty., Ga.*, 173 F.3d 1305, 1307 (11th Cir. 1999). "A public employee
> has a property interest in employment if existing rules or
> understandings that stem from an independent source such as state
> law create a legitimate claim of entitlement," and this determination
> "requires examination of relevant state law." *Id.* (citations and
> internal quotation marks omitted). An interest in continued
> employment may be created if a "state law or local ordinance in any
> way limits the power of the appointing body to dismiss an employee."
> *Id.* (citation and internal quotation marks omitted).

> Employment in Alabama "is terminable at will by either party for any
> reason unless there is an express and specific contract for lifetime
> employment or employment for a specific duration." *Howard v. Wolff*
> *Broad. Corp.*, 611 So.2d 307, 310 (Ala.1992). "At-will" employment may
> be terminated "with or without cause or justification," and employees
> "bear a heavy burden of proof to establish that an employment
> relationship is other than 'at will.'" *Id.* at 310–11 (citation and some
> internal quotation marks omitted). Because an at-will employee does
> not have a property interest in continued employment, she is "not
> entitled to procedural due process in connection with her termination."

> *Adams v. Bainbridge–Decatur Cnty. Hosp. Auth.*, 888 F.2d 1356, 1366
> (11th Cir. 1989).

587 Fed.Appx. 536, 541 (11th Cir. 2014).

Plaintiff cannot establish that a dispute of material fact exists as to whether she had a property interest in her employment.  Plaintiff testified that she understood (1) her employment at the Library was at-will, (2) her employment could be terminated by the Library board at any time, and (3) her termination could be without cause.  (Doc. 94-4 at 25-26; PageID.570-71).  Recognizing that at-will employees do not have a recognized property interest, Plaintiff contends that the articles of incorporation created such a right.  At most, however, the articles only specify that Plaintiff is a public employee, not that she has a property interest in her employment.  Moreover, to the extent Plaintiff contends that being a public employee creates a property interest in her employment, Plaintiff has not provided any authority supporting her position and makes no argument that the relevant articles are state law.  *See Wofford v. Glynn Brunswick Mem'l Hosp.*, 864 F.2d 117, 120 (11th Cir. 1989) ("[A] claim of entitlement to continued employment must be decided by reference to state law.") (citations omitted).  The circumstances of Plaintiff's employment is also distinguishable from *Gallbreath* on which she relies, because in *Gallbreath,* the Plaintiff entered into a contract for employment which specifically established a property interest in her continued employment, whereas Harris, did not.  As a result, there are no facts disputing that Plaintiff was an at-will employee or that she knew she was an at-will employee. Accordingly, there are

no facts to support that Plaintiff had a property interest in her employment such that she would be entitled to a pre-termination hearing.  As such, her termination without a hearing could not violate her due process rights and summary judgment is warranted.

Defendants alternatively assert that to the extent that Plaintiff had a property interest in her employment, her claim is still subject to summary dismissal because she "was afforded a pre-termination process that comported with the process required under the Fourteenth Amendment."  (Doc. 96 at 18; PageID.665). In response, Plaintiff acknowledges that a hearing was held and that she voluntarily left the hearing prior to its conclusion.  (Doc. 100 at 11-12)  She argues, however, that at no point was it communicated to her that the hearing was held in order to determine whether she should be terminated.  (*Id*.) Accordingly, Plaintiff contends that the hearing wherein she was terminated was inadequate.  (*Id*.)

If a plaintiff has a property interest in continued employment, then he is entitled, at a minimum, to " 'oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story' before a state or state agency may terminate an employee." *McKinney v. Pate*, 20 F.3d 1550, 1561 (11th Cir. 1994) (en banc) (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985)). "In other words, the employee is entitled to 'some kind' of pre-termination hearing." *Id*. (citing *Loudermill*, 470 U.S. at 542). The state is not required to hold a "mini-trial." *McKinney*, 20 F.3d at 1561. Instead,

15

a pre-termination hearing " 'should be an initial check against mistaken decisions—essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action.' " *Id.* (quoting *Loudermill*, 470 U.S. at 545–46). "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (quoting *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965)).

Assuming Plaintiff had a property interest in her employment, the undisputed material facts establish that she was given an opportunity to be heard. She was notified that a board meeting would take place, asked to attend the meeting, and voluntarily left before the meeting concluded. Although Plaintiff attempts to rebut that she was given proper notice that the meeting would address Plaintiff's EEOC allegations by presenting the testimony of Pridgen, wherein Pridgen stated that she was unaware that the meeting was intended to terminate Harris, Plaintiff's efforts fall short. Pridgen's testimony does not overcome Plaintiff's own understanding. Specifically, Plaintiff testified that she believed the Board had decided to fire her prior to the meeting. (*Id.* at 85-86; PageID.632-33) ("And prior to the firing me, they had changed the locks on the doors, so I kind of, like, felt like that this was going to take place" […] "I understood that that was the day that I was to be fired" […] "They had already made up in their minds that they

16

were going to fire me…").  Further, while present at the meeting, she stated that she could "sense something wasn't right," so she left the meeting to call her attorney who said "I'm not in town. Do not attend that meeting." (*Id*. at 85; PageID.630.  As a result, the undisputed facts establish that Plaintiff understood that nature of the meeting and chose to not participate in it.  As a result, she cannot present a dispute of material fact as to whether she was afforded and denied an opportunity to be heard in violation of her due process rights. Therefore, even if Plaintiff had a property interest in her employment (which she did not) summary judgment remains appropriate as to Count I.

### C.   Count II: 42 U.S.C. § 1983 Violation of Plaintiff's 14th Amendment Equal Protection Rights - Race Discrimination

Defendants argue summary judgment is warranted as to Harris' discrimination claims based on both a failure to promote and her termination.  (Doc. 96 at 19-29; PageID.666-76, generally). The Court will address each argument in turn.

### 1.   Failure to Promote

Defendants assert that Plaintiff's failure to promote claim is barred by the applicable statute of limitations or alternatively, because Plaintiff has failed to establish that Defendants' non-discriminatory reasons for not promoting her were pretextual.  (Doc. 96 at 20-24; PageID.667-71).  In response, Plaintiff argues that her failure to promote claim "is not a simple denial of a promotion on October 28, 2016", but that it was an "on-going classification discrimination claim because

Harris was serving as the Librarian Director but carrying the designation of 'interim'." (Doc. 100 at 12; PageID.697).  Further, Plaintiff argues there is "no need to run a comparison between Harris and the other two candidates". (*Id*. at 13; PageID.698).  Relying on *Thigpen v. Bibb County, Ga., Sheriff's Dept.*, 223 F.3d 1231, 1237 (11th Cir. 2000), Plaintiff asserts that failing to properly classify her is a state action. [5] (Doc. 100 at 14; PageID.699).  In reply, Stacey argues that the denial of a promotion was not an ongoing violation, but rather a one-time violation which took place on October 28, 2016, when Plaintiff became aware that she was not going to be promoted. (Doc. 103 at 4-6; PageID.747-49).  Pridgen, Powell, Sanders and the Board additionally argue that Plaintiff failed to cite to any legal authority that the statute of limitations for an on-going classification discrimination claim does not begin to run at the first discovery of injury, i.e., on October 28, 2016. (Doc. 102 at 3; PageID.741).

---

[5] Plaintiff additionally provides the following quote from *Thigpen*:

> In contrast, the applicability of the equal protection clause is not limited to only those instances in which property and liberty interests are implicated. *See* U.S. Const. amend. XIV, § 1. Rather, to properly plead an equal protection claim, a plaintiff need only allege that through state action, similarly situated persons have been treated disparately. *Cf. City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985); *Plyler v. Doe*, 457 U.S. 202, 216, 102 S.Ct. 2382, 2394, 72 L.Ed.2d 786 (1982).

The purpose of Plaintiff's reference to *Thigpen* is unclear.  There is no issue of whether Plaintiff properly *pled* a violation of the equal protection clause. Rather, the question is rather Plaintiff presented facts sufficient to overcome summary judgment.

18

In Alabama, there is a two-year statute of limitations for claims brought under the Equal Protection Clause of the Fourteenth Amendment, as enforced through § 1983. *Lufkin v. McCallum*, 956 F.2d 1104, 1106 & n. 2 (11th Cir. 1992) (noting that proper statute of limitations for § 1983 claim is the forum state's general statute of limitations for personal injury cases and that Alabama's statute of limitations is two years); *see also* Alabama Code § 6-2-38(l) ("actions for any injury to the person or rights of another not arising from contract and not specifically enumerated in this section must be brought within two years"). Even though state law determines the length of the limitations period, federal law governs when the statute of limitations begins to run, i.e., when the cause of action accrues. *Wallace v. Kato*, 549 U.S. 384, 388, 127 S.Ct. 1091, 1095, 166 L.Ed.2d 973 (2007). Under federal law, " '[accrual occurs] when the plaintiff has 'a complete and present cause of action' ' ... that is, 'when plaintiff can file suit and obtain relief.' " *Id*. (brackets in original) (citations omitted). The general federal rule is that a cause of action "will not accrue, and thereby set the limitations clock running, until the plaintiffs know or should know (1) that they have suffered the injury that forms the basis of their complaint and (2) who has inflicted the injury." *Chappell v. Rich*, 340 F.3d 1279, 1283 (11th Cir. 2003) (citation omitted).

The undisputed facts establish that Plaintiff was denied a promotion on October 28, 2016.  (*See* Doc. 94-4; PageID.638) ("I was interviewed for the job on October 24, 2016 and learned that I had not been selected on October 28, 2016.").

Plaintiff cites no legal authority supporting that her failure to promote claim should be considered an on-going violation.  Moreover, the Court agrees with Stacey's argument and the legal authority cited in support thereof, that Plaintiff's failure to promote claim is a one-time violation such that the continuing violation doctrine does not apply.  (Doc. 103 at 4-6; PageID.747-49).[6]  Moreover, even if Plaintiff's claim was an on-going violation, Plaintiff fails to set forth why the relevant statute of limitations would not begin to run from when she could *first* "file suit and obtain relief".  *See Wallace* at 388.  Indeed, Plaintiff makes no argument and presents no facts to support that (1) she was unaware that she was not promoted on October 28, 2016 – the injury that informs her complaint – or (2) she did not know who inflicted the injury.  Accordingly, the statute of limitations on Plaintiff's failure to promote claim accrued on October 28, 2016 and expired two years later, on October 28, 2018.  Because Plaintiff's original complaint was filed on June 5, 2019, her § 1983 action for failure to promote is barred by the applicable statute of limitations.

Assuming Plaintiff's failure to promote claim is not time-barred, it would still fail. With respect to a failure to promote claim, the Eleventh Circuit has plainly stated, as follows:

> To establish a prima facie case of discrimination in a promotional decision, a plaintiff must prove: (1) that she is a member of a protected minority; (2) that she was qualified and applied for the promotion; (3) that she was rejected despite these qualifications; and (4) other equally

---

[6] *See Natl. R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002); *Manley v. DeKalb County, Georgia,* 587 Fed. Appx. 507, 512 (11th Cir. 2014); *Calloway v. Partners Nat. Health Plans*, 986 F.2d 446, 448 (11th Cir. 1993).

20

> or less qualified employees who are not members of the protected
> minority were promoted. *See Taylor v. Runyon*, 175 F.3d 861, 866 (11th
> Cir.1999). Once the plaintiff has established a prima facie case of
> discrimination, the burden shifts to the employer to articulate some
> legitimate, nondiscriminatory reason for the employee's rejection. *See
> id.* If the employer meets this burden of production, the plaintiff must
> then establish that the defendant's proffered reasons for the
> employee's rejection were pretextual. *See id.* at 867.

*Lee v. GTE Fla., Inc.*, 226 F.3d 1249, 1253 (11th Cir. 2000).[7]

Plaintiff is an African American female.  She contends that she was qualified

and applied for the position of the Director of Library, that she was rejected despite

these qualifications, and that a non-African American was promoted. Assuming a

prima facie case has been established, the burden then falls to the employer to

establish a legitimate non-discriminatory reason for not promoting Plaintiff.  In this

action, Defendants have articulated that Plaintiff was not hired because she was

"less qualified for the position than Crystal Reynolds based on [their] consideration

of each candidates' performance in each aspect of the interview process." (Doc. 96 at

22; PageID.669).  In support, Defendants have provided the documents used in the

consideration process and the final scoring of both Reynolds and Harris.  (Docs. 94-3

at 19-28; PageID.533-42).  Defendants' burden at this stage is "exceedingly light;"

the defendant must merely proffer a non-discriminatory reason, not prove it.

*Perryman v. Johnson Prods. Co.*, 698 F.2d 1138, 1142 (11th Cir. 1983). "The

---

[7] Discrimination claims brought under the Equal Protection Clause are subject to
the "same standards of proof and employ the same analytical framework" as claims
under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2. *Nurse v. City of
Alpharetta*, 775 Fed. Appx. 603, 606 (11th Cir. 2019).

defendant need not persuade the court that it was actually motivated by the proffered reasons.... It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Id*. Defendants have met their burden.

Given that Defendants have provided a legitimate, non-discriminatory reason for their decision, Plaintiff must provide evidence that the proffered reason was pretextual. A plaintiff cannot establish pretext by simply demonstrating facts that suggest discrimination but must specifically respond to the employer's explanation and rebut it. *Crawford v. City of Fairburn, Ga.*, 482 F.3d 1305, 1309 (11th Cir. 2007). Pretext evidence is that which demonstrates "such weaknesses, implausibilities, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable fact finder could find them unworthy of credence." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997) (citation omitted). It is important to remember that an employer may make an employment decision for a "good reason, a bad reason, ... or no reason at all as long as its action is not for a discriminatory reason." *Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000) (quotation omitted). Plaintiff did not rebut Defendants' non-discriminatory reason for her non-promotion in her response. Instead, she asserts only that "there is no need to run a comparison between Harris and the other two candidates. Harris was performing the job for over 18 months and should have been given the designation, at some point without the interim

22

designation." (Doc. 100 at 13; PageID.698). Plaintiff's assertion, without more, does not establish that Defendants proffered reason for not promoting Plaintiff was pretextual. Accordingly, if her claim were not time barred, it would still be subject to dismissal.

### 2.    Termination

Defendants argue that Plaintiff's discrimination claim relating to her termination fails because she cannot show that Defendants "'treated [her] less favorable than a similarly situated individual outside of his protected class.'" (Doc. 96 at 25; PageID.672). In response, Plaintiff asserts that she need not establish a prima facie case under *McDonnell-Douglas*[8] or demonstrate pretext, because she has presented evidence that would allow a reasonable juror to infer race discrimination. (Doc 100 at 15; PageID.700). Stacey additionally argues that Plaintiff has failed to present a convincing mosaic of evidence to sustain her race discrimination claim. (Doc. 103 at 9-16; PageID.752-59).

All parties rely on *Smith v. Lockheed–Martin Corp.*, 644 F.3d 1321 (11th Cir. 2011) for their opposing positions. In *Smith*, the Eleventh Circuit explained the *McDonnell Douglas* framework with respect to discriminatory termination as follows:

> The first step of the *McDonnell Douglas* framework requires the plaintiff to make out a case sufficient to withstand a motion for summary judgment (or a motion for judgment as a matter of law)—i.e.,

---

[8] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05, 93 S.Ct. 1817, 1824–26, 36 L.Ed.2d 668 (1973).

a "prima facie case." When, as here, the plaintiff claims that his employer discharged him on account of his race, he must establish four elements: (1) that he is a member of a protected class (here, Caucasian); (2) that he was qualified for the position he held; (3) that he was discharged from that position; and (4) that in terminating his employment, his employer treated him less favorably than a similarly situated individual outside of his protected class (here, an African–American). *E.g., Maynard v. Bd. of Regents*, 342 F.3d 1281, 1289 (11th Cir.2003) (citing *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824. If the plaintiff makes this showing, he raises a presumption that his race motivated his employer to treat him unfavorably. *See Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981).

Once this presumption is raised, "[t]he burden then shifts to the employer to rebut [it] by producing evidence that [the employer's] action was taken for some legitimate, non-discriminatory reason." *EEOC v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1272 (11th Cir.2002) (citing *Burdine*, 450 U.S. at 254–55, 101 S.Ct. at 1094). If the employer meets its burden of production, the presumption of discrimination raised by the plaintiff's prima facie case is rebutted and thus disappears.

Once the presumption of discrimination is rebutted, the inquiry " 'proceeds to a new level of specificity,' " whereby the plaintiff must show the employer's proffered reason to be a pretext for unlawful discrimination. *Id.* at 1272–73 (citing *Burdine*, 450 U.S. at 255–56, 101 S.Ct. at 1095–96). It is at this stage that the plaintiff's "burden ... merges with the ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination." *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095. Thus, if a jury reasonably could infer from the evidence presented that the employer's legitimate justification is pretextual, the question becomes whether the evidence, considered in the light most favorable to the plaintiff, yields the reasonable inference that the employer engaged in the alleged discrimination. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 146–48, 120 S.Ct. 2097, 2108–09, 147 L.Ed.2d 105 (2000) (explaining that, depending on the facts of the case, the jury may, but need not, infer discriminatory intent from a plaintiff's showing of pretext). If such an inference is raised by the record, it precludes summary judgment (or judgment as a matter of law). *Id.*

24

*Smith* at 1328.

Defendants first argue that Plaintiff failed to identify a comparator, the
required fourth prong of the *McDonnell Douglas* test.  (Doc. 96 at 25; PageID.672).
In response, Plaintiff does not argue that she identified a comparator, but rather
asserts that pursuant to *Smith*, she is not required to. [9]  Specially, Plaintiff relies on
the following text in *Smith*:

> [e]stablishing the elements of the *McDonnell Douglas* framework is
> not, and never was intended to be, the *sine qua non* for a plaintiff to
> survive a summary judgment motion in an employment discrimination
> case. Accordingly, the plaintiff's failure to produce a comparator does
> not necessarily doom the plaintiff's case.  Rather, the plaintiff will
> always survive summary judgment if he presents circumstantial
> evidence that creates a triable issue concerning the employer's
> discriminatory intent.

(Doc. 100 at 15; PageID.700) (citing Smith at 1328).  Plaintiff additionally cites a
line of cases wherein a Plaintiff's claim was not defeated by an inability to identify a
comparator.[10]  Then, in support of her position that she has presented
circumstantial evidence of discriminatory intent, Plaintiff points out the following:

> (1)  the Board was upset by Plaintiff's allegation in her EEOC charge
> and challenged Plaintiff's allegation because Plaintiff's statements did
> not take into account the KKK's exclusion of women from membership;

---

[9] Defendants' argument relating to Plaintiff's failure to identify a comparator is set
forth with greater detail in Stacey's brief (Doc. 96).  However, because Plaintiff's
response makes no argument that she identified a comparator and instead, argues
that she need not do so, the Court's Order does not address the specifics of Stacey's
position in more detail.
[10] *Nix v. WLCY Radio/Rahall Commc's*, 738 F.2d 1181, 1184 (11th Cir.1984);
*Chapter 7 Trustee v. Gate Gourmet, Inc.*, 683 F.3d 1249, 1255–56 (11th Cir. 2012);
*Flowers v. Troup County, Ga., School Dist.*,803 F.3d 1327, fn. 7 (2015) (citations
omitted).

(2) Stacey explained that the Sons of Confederate Veterans is restricted to descendants who served in the confederate rebellion, but there is a "recognized crossover between SCV and hate groups such as the KKK";

(3)  that a second lecture by SCV Commander Pierce commemorated Bedford Forrest who later became the first grand wizard of the KKK";

(4) that descendants of the Confederate Army gathering in the town library to celebrate Confederate Memorial Day raised her concern and she received complaints from black patron;

(5) Plaintiff observed a conflict between an African American patron about the program and observed that there are "still some KKK membership around";

(6) Harris was called the N word by an unknown patron before the presentation started

(*Id.* at 15-17; PageID.700-02). After pointing to this evidence, Plaintiff states that "[r]ace and confederate history run through Harris' filing an EEOC Charge protesting the celebration of the Confederate Memorial Day precluding summary judgment." (Doc. 100 at 17; PageID.702).

Plaintiff is correct that in some instances the *McDonnell Framework* is not the only method by which to succeed on in a discrimination case.  Indeed, *Smith* explains that a plaintiff who cannot meet the *McDonnell Douglas* framework may overcome summary judgment if the facts constitute a "convincing mosaic of circumstantial evidence" showing intentional discrimination. *See Smith* at 1328. However, the analysis does not end there.  It remains a plaintiff's burden to meet this standard by showing, "among other things, (1) 'suspicious timing, ambiguous

26

statements, and other bits and pieces from which an inference of discriminatory intent might be drawn,' (2) systematically better treatment of similarly situated employees, and (3) that the employer's justification is pretextual." *Lewis v. City of Union City, Ga.*, 934 F.3d 1169, 1185 (11th Cir. 2019) (quoting *Silverman v. Bd. of Educ. of City of Chi.*, 637 F.3d 729, 734 (7th Cir. 2011)). Such evidence must lead to the "unavoidable inference" of intentional discrimination. *Smith*, 644 F.3d at 1346.

This Court finds that the evidence presented by Plaintiff is insufficient to establish the convincing mosaic required to defeat summary judgment. Beyond the Board allegedly being upset by Plaintiff's EEOC charge, the remaining "facts" have no discernable role in Plaintiff's termination. More specifically, the termination letter clearly states the reason for Plaintiff's termination. The fact that it also disputes Plaintiff's allegation by stating that women cannot be members of the KKK, does not create an alternative basis for Plaintiff's termination. Put differently, Defendants do not allege that Plaintiff was terminated because she incorrectly stated that women could be members of the KKK. Rather, she was terminated because she alleged that seventy Library patrons were KKK affiliates, women or not. As a result, Plaintiff's efforts to create a dispute on this issue leads to no inference that she was terminated based on her race. Plaintiff's efforts to infer relationship between the KKK and the SCV likewise fail to support her claim of discriminatory termination. Finally, the complaints and comments from African American patrons who were not the individually-named defendants or members of

the Board fail to demonstrate that Plaintiff's race was a factor in her termination.

In all, the mosaic of facts presented by Plaintiff seems to suggest only that her

allegation to the EEOC was in some way justified or perhaps, not incorrect.

However, regardless of whether Plaintiff's allegation was (or could have been) true

no facts exist to support an "unavoidable inference" that her termination was based

on her race.  Moreover, while Plaintiff has offered "bits and pieces" from which she

alleges an inference of discriminatory intent can be drawn, she wholly fails to allege

"systematically better treatment of similarly situated employees" or factual

evidence that "the employer's justification is pretextual." *See Lewis* 934 F.3d at

1185.  As a result, Plaintiff's factual mosaic simply falls short of the evidence

needed for this Court to circumvent the *McDonnell Douglas* framework. [11]

Finally, considering the *McDonnell Douglas* framework, Plaintiff cannot

defeat summary judgment.  Even assuming Plaintiff established a prima facia case.

Defendants have provided a legitimate non-discriminatory reason for Plaintiff's

termination.  In this case, Defendants assert Plaintiff was fired for "baselessly

accusing 70 patrons of the Library of being 'known Ku Klux Klan affiliates' – a

---

[11] *See e.g. King v. ST Aerospace Mobile, Inc., 2013 WL 2635926 (S.D. Ala. June 11, 2013)* (finding plaintiff failed to present evidence of a mosaic theory); *Williams v. Cleaver-Brooks, Inc.* 2012 WL 6151141 *8 (M.D. Ga. December 11, 2012) (same); *see also Bell v. Crowne Management, LLC,* 844 F.Supp.2d 1222, 1232 (S.D. Ala. January 5, 2012) ("To the extent that *Smith* suggests the burden-shifting paradigm of *McDonnell Douglas* can be ignored in a case based on circumstantial evidence, freeing the plaintiff from any obligation to establish a prima facie case, it is in tension with a long line of Eleventh Circuit precedent.")

white supremacist terrorist hate group."  (Doc. 96 at 27; PageID.674). The record reflects that Stacey believed Harris's actions showed a disregard for the patrons and interests of the Library and that Plaintiff's conduct was detrimental to the Library's status and good will in the community.  (*Id.*; *see also* Doc. 94-3; PageID.518). Plaintiff's response does not address Defendants' alternative position or otherwise attempt to establish that the articulated basis for terminating her was pretextual. Accordingly, there is no dispute of material fact and summary judgment is proper.

### D.    Count III: 42 U.S.C. § 1983 Violation of Plaintiff's 14th Amendment Equal Protection Rights - Retaliation

In Count III Plaintiff alleges that she "was terminated for participating in the EEOC process and for opposing discrimination, and that the "Board's conduct was retaliatory in violation of the Equal Protection Clause".  (Doc. 51 at 10; PageID.315). Defendants assert that because a retaliation claim does not implicate the Equal Protection Clause, summary judgment should be granted.  (Doc. 96 at 29; PageID.676.)  In response, Plaintiff states "[w]hile the weight of authority cited by the defendant is against Harris, the 2nd Circuit has concluded that retaliation claims do fall under the Equal Protection clause [...]" (Doc. 100 at 17; PageID.702).

As pointed out by Defendants, the Eleventh Circuit Court of Appeals has long recognized that a "pure or generic retaliation claim. . . simply does not implicate the Equal Protection Clause." *Watkins v. Bowden*, 105 F.3d 1344, 1354 (11th Cir. 1997) (citing *Ratliff v. DeKalb County*, 62 F.3d 338, 340 (11th Cir. 1995) (holding "no clearly established right exists under the equal protection clause to be free from

retaliation."). Plaintiff's reference to the Second Circuit does nothing to keep her claim alive.[12]  Because the Eleventh Circuit has clearly concluded that no such claim is viable, summary judgment is due to be granted as to Count III.

### E.   Count IV:  29 U.S.C. § 621 *et seq* – Age Based Employment Discrimination (against the Board)

Count IV of Plaintiff's Complaint alleges that Defendants were aware of her age which was in the protected category (above 40), that there was no non-discriminatory reason for terminating Plaintiff, and that Defendants replaced Plaintiff with a younger selectee.  (Doc. 51 at 10; PageID.315).

The Board asserts that Plaintiff's claim fails because it was filed after the statute of limitations ran.  (Doc. 95 at 2-3).  The Board alternatively argues that if Plaintiff's claim is not barred by the statute of limitations, then it should be dismissed because Plaintiff failed to establish a prima facia case.  (*Id*.)  More specifically, the Board contends that it had non-discriminatory reasons for terminating Harris, because of Reynolds' superior performance and work history. (*Id*.)  Further, The Board argues that Plaintiff cannot establish that she faced an adverse employment action in contrast to a similarly situated employee because Reynolds was 47 years old and in the same protected class as Plaintiff.  (*Id*.)

In response, Plaintiff again argues that her discrimination claim was an

---

[12] It is worth noting that while Plaintiff cites to the Second Circuit, she does not attempt to persuade this Court that it should consider the Second Circuit's reasoning or conclusion, despite sound precedent to the contrary.

ongoing violation which did not end until her termination, thereby making her claim timely.  (Doc. 100 at 19; PageID.704).  Plaintiff additionally points to several facts as evidence which ostensibly support that Plaintiff has established a prima facie case.[13]  Specifically, Plaintiff points to two facts: (1) Plaintiff was informed that the Library needed someone with "youthfulness and fresh ideas" and (2) Harris was called a "dinosaur".[14]  (Doc. 100 at 19; PageID.704).

### 1.    Statute of Limitations

The ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's age." 29 U.S.C. § 623(a)(1) (2006). In Alabama, the ADEA requires a party to file a charge of age discrimination with the EEOC within 180 days after the alleged unlawful practice occurred. *Jones v. Dillard's, Inc.*, 331 F.3d 1259, 1263 (11th Cir. 2003). Plaintiff filed her EEOC charge claiming age discrimination in August 2017, more than 180 days after she was informed she would not be promoted to Director of the Library.  (Doc. 51-1 at 8; PageID.327) Additionally, Plaintiff did not file suit alleging her age discrimination claims until

---

[13] Plaintiff does not separately address any of the issues raised by the Board in its motion (beyond timeliness) nor does she cite to any legal authority or rationally argue how the facts relied on support her unstated position.

[14] The evidence shows there is a factual dispute as to whether Plaintiff was called a "dinosaur" by someone else or whether she called herself a "dinosaur." (Doc. 100 at 19; PageID.704).

more than two years after she was denied the promotion. (*Id*.)  Plaintiff again fails to provide any legal support that her claim is not-time barred.  Additionally, her assertion that the age discrimination was "on-going" is without merit for all of the reasons stated herein above with respect to Plaintiff's race discrimination claim.  Again, Plaintiff was notified that she would not receive the Director position on October 28, 2016.  As such, her age-based discrimination claim is time-barred and summary judgment is due to be granted.

### 2.    Prima Facie Case

Even if Plaintiff's claim were not time-barred, she fails provide factual evidence of a prima facie case of age discrimination.  To make a prima facie case of age discrimination, the employee must show: (1) he was a member of the protected group between the age of forty and seventy; (2) he was subject to an adverse employment action; (3) a substantially younger person filled the position from which he was discharged; and (4) he was qualified to do the job from which he was discharged.  *Liebman v. Metropolitan Life Ins. Co.*, 808 F.3d 1294, 1298 (11th Cir. 2015) citing to *Kragor v. Takeda Pharm. Am., Inc.*, 702 F.3d 1304, 1308 (11th Cir. 2012). Once an employee has established a prima facie case, "the burden shifts to the employer to rebut the presumption of discrimination with evidence of a legitimate, nondiscriminatory reason for the adverse employment action." *Id.* If the employer proffers a legitimate, nondiscriminatory reason, the burden shifts back to the employee to show that the employer's reason is a pretext. *Id.*

First, Plaintiff provides no facts establishing "a substantially younger person" filled the Director position, as she is required to do.  Rather, the record establishes that Reynolds was also a member of the protected class. Further, assuming she established a prima facie case, Plaintiff still fails to present a dispute of material fact that the Board's proffered non-discriminatory reasons for not promoting her were pretextual.[15]  As a result, summary judgment is warranted as to Count IV.

## CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendants' motions for summary judgment (Docs. 95 and 96).

**DONE** and **ORDERED** this 16th day of March, 2022.

/s/ Callie V. S. Granade
SENIOR UNITED STATES DISTRICT JUDGE

---

[15] The text of the ADEA does not authorize a "mixed-motives" age-discrimination claim and "to establish a disparate-treatment claim under the plain language of the ADEA, a plaintiff must prove that age was the 'but-for' cause of the employer's adverse decision." *Gross v. FBL Fin. Serv., Inc.*, 557 U.S. 167, 129 S.Ct. 2343, 2349–50 n. 2, 174 L.Ed.2d 119 (2009). "While '[t]he Supreme Court did not answer in *Gross* whether the traditional *McDonnell Douglas* [*Corp. v. Green*, 411 U.S. 792 (1973),] framework should still be applied in ADEA cases, [t]he Eleventh Circuit has continued to apply *McDonnell Douglas* analysis in ADEA cases.'" *E.E.O.C. v. Winn-Dixie Montgomery, LLC*, 2011 WL 111689 *4 (S.D. Ala. January 12, 2011).